HRUZ, J.[1]
¶1 Simon appeals circuit court orders involuntarily terminating his parental rights to his twin sons, Austin and Anthony.[2] He argues the court erred when it entered default judgments finding that grounds existed to terminate his parental rights. Simon also asserts that the proceedings violated his right to due process because they were fundamentally unfair. Finally, he contends the court erred when it denied his postdisposition motion to vacate both default judgments. We affirm.
BACKGROUND
¶2 Austin and Anthony were found to be children in need of protection or services and placed in out-of-home care pursuant to CHIPS[3] dispositional orders entered in October 2016, when they were just over one and one-half years old. In December 2017, the Barron County Department of Health and Human Services (the Department) petitioned the circuit court to involuntarily terminate Simon's parental rights to both Austin and Anthony.[4] The termination of parental rights (TPR) petitions alleged three grounds of parental unfitness: abandonment; continuing need of protection or services; and failure to assume parental responsibility. See WIS. STAT. § 48.415(1)(a)2.-3., (2)(a), (6)(a).
¶3 On January 2, 2018, the Department moved for partial summary judgment only on the abandonment ground, asserting that the undisputed facts showed Simon was an unfit parent on that basis. That same day, Simon was personally served at the Barron County jail with the TPR summonses and petitions. The summons in each case stated: "IF YOU FAIL TO APPEAR, the court may hear testimony in support of the allegations in the attached [TPR] petition and grant the request of the [Department] to terminate your parental rights." (Boldface omitted.) Simon was also personally served with the Department's notice of motion and motion for partial summary judgment two days later.
¶4 Simon appeared in person, but without counsel, at the first hearing on the TPR petitions on January 18, 2018. He was still in the custody of law enforcement at that time. The circuit court adjourned the hearing because Austin and Anthony's mother was absent and had not been personally served with the TPR summonses and petitions, and because Simon had yet to be appointed counsel from the public defender's office. The first adjourned hearing occurred on February 26, 2018. Simon's counsel appeared in person, but Simon, who was then no longer in the custody of law enforcement, did not appear. The court adjourned the matter for a second time. On April 5, 2018, the court held a hearing encompassing both Simon's second adjourned TPR hearing and a permanency plan review in Austin's and Anthony's CHIPS cases. Simon again did not appear in person, but his appointed attorneys in both the TPR and CHIPS cases were present.
¶5 At the April 5 hearing, the circuit court inquired whether Simon's TPR counsel had an opportunity to speak with Simon about the petitions. Simon's counsel responded:
Judge, at this point I don't think I'm comfortable discussing with the Court the contacts I have or haven't had with my client. I do represent him and I'm here today doing that.
I guess maybe what I'll say is [the Department] and I talked before court so I know what requests [it's] going to make and I think we can get through this hearing easily without [Simon] here with me representing him.
Upon the Department's request, the court then ordered Simon to appear at the next hearing, which was scheduled for May 1, 2018, at 3:45 p.m. In particular, the resulting order stated:
Based upon [Simon's] failure to appear, IT IS ORDERED THAT:
....
(2) [Simon] is ordered to appear in person at all future court appearances in these proceedings, and is specifically ordered to appear in person [on May 1, 2018, at 3:45 p.m.] ....
Failure by ... [Simon] to appear in person may result in the Court granting the [TPR petition] by default. Further, pursuant to WIS. STAT. § 48.23(2)(b)3., [Simon] is admonished that where the Court has ordered him to appear in person at all future court proceedings, he is presumed to have waived his right to counsel and to appear by counsel if he fails to appear as ordered, and the Court finds that his conduct in failing to appear is egregious and without justifiable excuse. He is further admonished that failure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered by the Court is presumed to be conduct that is egregious and without clear and justifiable excuse.
(Boldface omitted.) To provide Simon with notice of the order, the court also decided that notice would be served on both Simon's counsel and on Simon himself, by mailing it to his sister's address, which was Simon's last known address according to the court file.
¶6 At the May 1, 2018 hearing, Simon again failed to appear in person. The circuit court first addressed the Department's motion for the court to determine that Simon had waived his right to counsel, pursuant to WIS. STAT. § 48.23(2)(b)3. After argument from counsel, the court concluded Simon statutorily waived his right to counsel:
We don't know if he wants a jury trial. We don't know if he wants a different judge. We don't know whether he wants to contest these matters any further or not because he hasn't been in touch with anybody. He's simply fallen off the radar screen and hasn't surfaced since January, some five months ago, nearly, and I don't believe that it's necessary that we continue to have failures to appear before this Court can find that his failure to appear, failing to communicate with his attorney, otherwise failing to provide any kind of a justification or excuse for this nonappearance or failure to appear is anything other than egregious and a ... lack of concern about these proceedings.
¶7 The Department then moved the circuit court for default judgments finding that grounds existed to terminate Simon's parental rights. The court received testimony from the Barron County social worker involved in Austin's and Anthony's respective CHIPS cases. Thereafter, the court granted the Department's motion for default judgments, determined Simon was an unfit parent, and found grounds existed to terminate his parental rights to Austin and Anthony based upon abandonment, continuing need for protection or services, and failure to assume parental responsibility.
¶8 The TPR dispositional hearing occurred three days later on May 4, 2018. Simon appeared in person, along with the same counsel whom the circuit court determined Simon had waived his right to at the prior hearing. Simon had been arrested in Barron County on May 3, and, while he was in jail, had been "advised that there was a hearing ... that he could appear at if he wanted to."
¶9 The hearing began with Simon, by counsel, orally moving the circuit court to vacate the default judgments it had ordered on May 1. Counsel also moved to adjourn the dispositional hearing so that Simon could brief his motion to vacate the judgments and prepare for the dispositional hearing. The Department objected to the court hearing any "substantive motions," and it further objected to the possibility of adjourning the dispositional hearing. Following a thorough discussion of whether counsel for Simon was still permitted to represent Simon following Simon's previous waiver of the right to counsel, the court determined that it would not "preclude [Simon's counsel] from sitting in on [the] hearing and trying to advocate for [him]," but, nonetheless, it denied Simon's request to adjourn the dispositional hearing. The court did not explicitly rule on Simon's oral motion to vacate the default judgments. Thereafter, the court terminated Simon's parental rights to Austin and Anthony after concluding termination was in their best interests.
¶10 Simon obtained new counsel and initiated his appeals of the circuit court's TPR orders, which we consolidated on our own motion. Simon then moved to remand the cases to the circuit court for postdispositional fact finding. He argued that the circuit court's failure to address his motion to vacate the default judgments and its denial of his request for adjournment of the TPR dispositional hearing on May 4 denied him the opportunity "to address legal issues" and "to provide justifiable excuse for failing to appear at the May 1 ... hearing." We determined that Simon's motion showed good cause, and, therefore, we granted his motion to remand the matter to the circuit court.
¶11 Pursuant to our remand order, Simon moved the circuit court, by written motion, to vacate its May 1, 2018 default orders, and the court held an evidentiary hearing on Simon's postdisposition motion on January 15, 2019. Simon testified as to the reasons for his failed appearances, and his counsel argued that Simon's conduct in missing the hearings was not egregious and without clear and justifiable excuse as required to enter default judgments against him under WIS. STAT. § 48.23(2)(b)3.
¶12 In particular, Simon testified he was released from jail on January 26, 2018, and went to live with his sister in Barron for a week. Simon subsequently found work outside of Barron, but he continued to use his sister's address to receive mail. He also confirmed that his sister's address was the same address stated on the April 5 and May 1 hearing notices. Simon asserted that he "forgot" about the February 26 hearing and that he never received notice of either the April 5 or May 1 hearings. When asked why he never contacted the public defender's office or the circuit court once he was released from jail, he responded, "I guess I don't have an answer. All I was trying to do was find a job, and try to get back on my feet, and get an apartment and start from there. I had nothing for myself." Simon also admitted to his criminal conduct that occurred "in the spring" of 2018-i.e., during the same time he had been absent from his TPR proceedings-and that he would not have been present in court on May 4 had he not been arrested and in jail due to that criminal conduct.
¶13 The circuit court denied Simon's postdisposition motion. It found Simon's testimony regarding the lack of notice of his TPR proceedings "somewhat incredulous." The court concluded Simon waived his right to counsel because his conduct was egregious and without justifiable excuse. We now address Simon's consolidated appeals of the orders terminating his parental rights to Austin and Anthony.[5]
DISCUSSION
I. The circuit court properly exercised its discretion when it entered default judgments finding that grounds existed to terminate Simon's parental rights.
¶14 Simon first argues the circuit court erred when it found him in default at the grounds phase of his TPR proceedings.[6] We review a circuit court's decision to enter a default judgment at the grounds phase of a TPR proceeding for an erroneous exercise of discretion. See Dane Cty. DHS v. Mable K. , 2013 WI 28, ¶38, 346 Wis. 2d 396, 828 N.W.2d 198. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. Id. , ¶39. Here, we must determine whether the court properly applied the statute that affords parents the right to counsel during TPR proceedings, WIS. STAT. § 48.23(2). This determination rests on whether the court correctly interpreted that statute and applied a proper standard of law, and we review such questions of law independent of the circuit court. Mable K. , 346 Wis. 2d 396, ¶39.
¶15 WISCONSIN STAT. § 48.23(2)(b) provides that any parent who appears before the circuit court for a proceeding involving the involuntary termination of his or her parental rights "shall be represented by counsel." There are, however, exceptions to this rule. One such exception occurs when a parent "is presumed to have waived his or her right to counsel" because he or she fails to appear in person at court hearings. Sec. 48.23(2)(b)3. In relevant part, subd. 3. provides:
[A] parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse. Failure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse. If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the ... involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.
Id. Once a court concludes a parent has waived his or her right to counsel, it may, as a sanction for failing to appear when ordered, find that grounds exist to terminate his or her parental rights by default. C.f. Evelyn C.R. v. Tykila S. , 2001 WI 110, ¶17, 246 Wis. 2d 1, 629 N.W.2d 768.
¶16 Simon argues the circuit court misapplied WIS. STAT . § 48.23(2)(b)3. Specifically, he asserts the court could not determine that he waived his right to counsel under § 48.23(2)(b)3. because he did not miss consecutive appearances after the court, on April 5, ordered him to appear at the May 1 hearing. Simon's argument misapprehends § 48.23(2)(b)3. The court properly interpreted that statute when it determined that Simon statutorily waived his right to counsel by failing to appear at the May 1 hearing.
¶17 The plain meaning of WIS. STAT. § 48.23(2)(b)3. does not prohibit a circuit court from finding a "parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse" after missing only one hearing. Subdivision 3. requires three conditions before a parent may be determined to have waived the right to counsel: (1) the parent must have been ordered to appear at "any or all subsequent hearings"; (2) "the parent fails to appear in person as ordered"; and (3) "the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse." Id. Nothing in subd. 3's language mandates that a parent must miss consecutive hearings after being ordered to appear before that parent is presumed to have waived the right to counsel. Indeed, the relevant language allows a presumption of the waiver of counsel "if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding." Id. (emphasis added). When Simon failed to appear at the May 1 hearing after the court had ordered him to appear at that hearing on April 5, § 48.23(2)(b)3. permitted the court to determine that he waived his right to counsel if it found Simon's conduct was egregious and without clear and justifiable excuse.
¶18 To be sure, subd. 3. permits a circuit court to presume that a parent's conduct is egregious and without clear and justifiable excuse-i.e., the third necessary condition-if that parent fails "to appear in person at consecutive hearings as ordered." Id. However, as Simon adamantly notes, this type of failure did not occur here. Rather, Simon failed to appear at only one hearing after he had been ordered to so appear. But this merely means that the presumption of egregiousness and a lack of clear and justifiable excuse found in the second sentence of § 48.23(2)(b)3. does not apply. It does not mean, as Simon argues, that the circuit court could not determine that Simon presumptively waived his right to counsel, due to his failure to appear at the May 1 hearing, because his "conduct in failing to appear in person" was otherwise "egregious and without clear and justifiable excuse." Id.
¶19 We thus turn to whether the circuit court properly found Simon's conduct throughout the course of his TPR proceedings made his failure to appear at the May 1 hearing egregious and without clear and justifiable excuse. In so doing, we will not set aside the court's findings of fact unless they are clearly erroneous. See WIS. STAT. § 805.17(2). However, we review independently the court's application of WIS. STAT. § 48.23(2)(b)3. to the facts of this case. See Deutsche Bank Nat'l Trust Co. v. Wuensch , 2018 WI 35, ¶19, 380 Wis. 2d 727, 911 N.W.2d 1.
¶20 We agree with the circuit court that Simon's conduct was egregious and without clear and justifiable excuse. "Egregious conduct means a conscious attempt to affect the outcome of litigation or a flagrant, knowing disregard of the judicial process." Morrison v. Rankin , 2007 WI App 186, ¶20, 305 Wis. 2d 240, 738 N.W.2d 588 (analyzing what constitutes egregious conduct for the purpose of imposing sanctions under WIS. STAT. §§ 804.12(2)(a) and 805.03 (2003-04)). Simon's actions, or lack thereof, show that he knowingly disregarded the TPR judicial process as a whole.
¶21 Simon took no initiative to inquire about the status of his TPR proceedings with the circuit court or with his appointed counsel after his release from jail on January 26. Simon was present at the January 18 initial TPR hearing where the court informed him that it was important for him to obtain an attorney because his parental rights to Austin and Anthony were in jeopardy, and that the next hearing date would be February 26. Yet, from January 18 until May 4, Simon was completely absent from his TPR proceedings. During that period of absence, Simon's appointed counsel appeared on his behalf, but counsel could not meaningfully represent Simon's interests during his absence. Important aspects of Simon's TPR proceedings could not take place because, as the circuit court noted, no one knew whether Simon wanted a jury trial, wanted a different judge, or even wanted to contest the TPR petitions. See WIS. STAT. § 48.422(1), (4) - (5).
¶22 Furthermore, circumstantial evidence demonstrates that Simon may have, at best, been willfully ignorant of his TPR proceedings. Simon appeared at the May 4 hearing only because he had been arrested and was in county jail for criminal conduct that occurred during his period of absence from his TPR proceedings. Additionally, Simon cannot be heard to claim that he did not understand the gravity of the proceedings-the court informed him of his TPR proceedings' importance at the initial January 18 hearing, and Simon had been actively involved in Austin's and Anthony's CHIPS proceedings. Therefore, the circuit court properly found that Simon's failures to communicate and to take part in his TPR proceedings between his initial appearance on January 18 and the TPR grounds hearing on May 1 constituted conduct that was egregious and without clear and justifiable excuse. Accordingly, the court properly concluded Simon statutorily waived his right to counsel in accordance with WIS. STAT. § 48.23(2)(b)3.
¶23 Simon asserts that his conduct was not egregious and without justifiable excuse because he only missed one hearing after the circuit court, on April 5, expressly ordered him to appear. Simon's argument, however, is misplaced because he fails to assess his conduct throughout his TPR proceedings' entirety. Nothing in WIS. STAT. § 48.23(2)(b)3. instructs that a court may consider only conduct that occurs after the court ordered a parent to appear. We cannot read language into the statute that does not exist. St. Croix Cty. DHHS v. Michael D. , 2016 WI 35, ¶17, 368 Wis. 2d 170, 880 N.W.2d 107. The court properly found Simon had no contact with his attorney between his appearance on January 18 and his (fortuitous) appearance on May 4. During that period, Simon missed three court dates, apparently did not communicate with his counsel, did nothing to inquire about the status of his TPR cases, and engaged in other conduct for which he had been criminally charged. Simon's argument therefore lacks merit.
¶24 Because the circuit court properly applied WIS. STAT. § 48.23(2)(b)3. to the facts of this case, it properly exercised its discretion when it entered default judgments finding that grounds existed to terminate Simon's parental rights. The court followed the proper procedures to find that Simon was in default at the May 1 TPR grounds hearing. See Mable K. , 346 Wis. 2d 396, ¶¶55-57. Moreover, Simon advances no argument on appeal that the evidence adduced at that hearing did not clearly and convincingly establish that grounds existed to terminate his parental rights. We therefore conclude the court properly exercised its discretion in granting the Department's motion for default judgments finding that grounds existed to terminate Simon's parental rights to Austin and Anthony.
II. Simon's TPR proceedings employed fundamentally fair procedures.
¶25 TPR proceedings implicate a parent's fundamental liberty interest to determine the care, custody and management of his or her child. Steven V. v. Kelley H. , 2004 WI 47, ¶22, 271 Wis. 2d 1, 678 N.W.2d 856. Due process therefore requires that "when the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Id. , ¶23 (citation omitted). "These include the requirement of a hearing and proof of parental unfitness by clear and convincing evidence." Id. (internal citations omitted). Whether a circuit court provided a parent in TPR proceedings with fundamentally fair procedures presents a question of law that we review independent of the circuit court. Mable K. , 346 Wis. 2d 396, ¶40. However, we will not set aside the court's underlying factual findings unless they are clearly erroneous. See WIS. STAT. § 805.17(2).
¶26 Simon claims that his TPR proceedings were fundamentally unfair and, therefore, violated his right to due process. He contends that he had no notice of the April 5 and May 1 hearings at which he failed to appear. The April 5 hearing culminated with the circuit court ordering him to appear at the May 1 hearing. At the May 1 hearing, Simon's failure to appear caused the court to determine that he statutorily waived his right to counsel and, consequently, to enter default judgments against him. In Simon's view, the court violated his due process rights when it impermissibly used his absences from those hearings, of which he asserts he had no notice, as a basis to find him in default at the grounds phase of his TPR proceedings.
¶27 The Wisconsin Rules of Civil Procedure apply to TPR proceedings under WIS. STAT. ch. 48 unless a different procedure is prescribed by chapter 48. See Steven V. , 271 Wis. 2d 1, ¶32 (citing WIS. STAT. § 801.01(2) (2001-02)). "Whenever ... service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court." WIS. STAT. § 801.14(2). "Service upon the attorney or upon a party shall be made by delivering a copy or by mailing [the documents] to the last-known address ...." Id. "Service by mail is complete upon mailing." Id. "A written motion ... and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by statute or by order of the court." WIS. STAT. § 801.15(4).
¶28 We agree with the Department that Simon had the requisite notice that he had been ordered to appear at the May 1 hearing and that the Department would move for default judgments if he failed to appear at that hearing. Simon had such notice because his attorney had been properly notified. "Parties are deemed bound by the acts of their attorneys and are considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " Gaertner v. 880 Corp. , 131 Wis. 2d 492, 501, 389 N.W.2d 59 (Ct. App. 1986) (citation omitted). Simon's attorney was present at the April 5 hearing when the circuit court orally ordered Simon to appear at the May 1 hearing. In addition, on April 18, the Department mailed Simon's attorney its notice of motion and motion to seek default judgments at the May 1 hearing, as well as the written order to appear that the court had entered after the April 5 hearing. That mailing constituted proper service by mail on Simon's attorney. See WIS. STAT. § 801.14(2). Because Simon's attorney had proper notice and was served with the relevant motions, we conclude Simon also had notice that he had been ordered to appear at the May 1 hearing, and that his failure to do so could lead to default judgments.
¶29 Furthermore, the Department properly served Simon by mail as well, which provides an additional basis to conclude that Simon had notice as a matter of law. The Department mailed the same three documents to Simon's last-known address-i.e., his sister's residence-well more than five days prior to May 1. The clerk of the circuit court also mailed hearing notices to this address. Simon admitted that, throughout his TPR proceedings, he was at his sister's residence every weekend and used his sister's address to receive mail. Therefore, even if we were to conclude that notice to Simon's attorney was insufficient to provide Simon himself with notice, the Department's serving him by mail provided him notice that he had been ordered to appear on May 1, and that his failure to do so would likely cause him to default at the grounds phase of his TPR proceedings. In all, Simon has failed to show that his TPR proceedings were not fundamentally fair.
III. The circuit court properly exercised its discretion when it denied Simon's postdisposition motion to vacate the default judgments.
¶30 Simon also asserts the circuit court erroneously exercised its discretion when it denied his postdisposition motion to vacate the default judgments. See Oostburg State Bank v. United Sav. & Loan Ass'n , 130 Wis. 2d 4, 11, 386 N.W.2d 53 (1986) ("The decision to grant or vacate a default judgment is within the discretion of the [circuit] court."). As we have previously observed, a court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. Mable K. , 346 Wis. 2d 396, ¶39.
¶31 Simon argues the circuit court did not apply the proper legal standard for a motion to vacate a judgment because it misapplied WIS. STAT. § 48.23(2)(b)3. As explained above, in Simon's view, the court erred in interpreting § 48.23(2)(b)3. 's plain language "by finding [him] in default when he missed one hearing after having been ordered by the court to appear." Again, Simon's understanding of § 48.23(2)(b)3. is incorrect.
¶32 As we have previously articulated, the circuit court properly applied WIS. STAT. § 48.23(2)(b)3. Subdivision 3. does not require a parent to have missed more than one court-ordered appearance before the court can find the parent's conduct in missing the hearing was egregious and without clear and justifiable excuse and, thereby, a waiver of his or her right to counsel.
¶33 A parent in a TPR proceeding may be entitled to relief from a judgment or order pursuant to WIS. STAT. § 806.07. See WIS. STAT. § 48.46(2) ; Adoptions of Wis., Inc. v. J.S. , No. 2015AP1403, unpublished slip op. ¶¶12-13 (WI App Jan. 29, 2016). As the Department correctly observes, however, Simon fails to develop any argument asserting how he is entitled to relief under § 806.07, let alone specify what § 806.07 ground he claims to satisfy. See § 806.07(1)(a)-(h). Citing to WIS. STAT. § 48.23(2)(b)3., Simon merely argues that his conduct was neither egregious nor without justifiable excuse-an argument that we have already concluded lacks merit. We therefore conclude the circuit court properly exercised its discretion when it denied Simon's postdisposition motion to vacate the default judgments.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

These appeals are decided by one judge pursuant to Wis. Stat. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

For ease of reading, we refer to S.R.T. ("Simon"), A.A.T. ("Austin") and A.L.T. ("Anthony") using pseudonyms, rather than their initials.

"CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code." Marinette Cty. v. Tammy C. , 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

The Department also petitioned to terminate the parental rights of Austin and Anthony's mother. The disposition of the mother's parental rights is not before us in these appeals.

Pursuant to Wis. Stat. Rules 809.19(8m) and 809.107(6)(d), Austin and Anthony's guardian ad litem filed a statement in this court choosing not to participate in these appeals, stating her "position and underlying legal support are the same as the [Department]."

TPR proceedings involve a two-step procedure. Evelyn C.R. v. Tykila S. , 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768. The first step is a fact-finding hearing to determine whether grounds exist for the termination of a parent's rights. Id. The second step is a dispositional hearing, at which the circuit court decides whether termination of the parent's rights is in the child's best interests. See id. , ¶23.